UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROBERT J. POLLOCK,

     Applicant,

v.                                  CASE NO. 8:21-cv-1665-SDM-CPT

SECRETARY, Department of Corrections,

     Respondent.
_____/

## **ORDER**

     Pollock applies (Doc. 1) under 28 U.S.C. § 2254 for the writ of habeas corpus and challenges his conviction for murder in the second degree, for which he is imprisoned for thirty years.  Numerous exhibits ("Respondent's Exhibit") support the response.  (Doc. 12)  The respondent admits the application's timeliness (Response at 2, Doc. 12) but argues that some grounds are unexhausted and procedurally barred from federal review.

## I.     **BACKGROUND**[1]

     Based on information received from Larry Hummel, Tampa Police Department Detective Eric Houston researched both a foreclosed residence and two possible suspects (Robert Pollock and Dorsey France) regarding the disappearance of Nicki

---

[1] This summary of the facts derives from Pollock's brief on direct appeal. (Respondent's Exhibit 28 at 1–2)

Hendriex.  After unsuccessfully attempting to locate Hendriex, Detective Houston spoke with Tamela Cagle and later decided to investigate the residence with the permission of the bank that owned the property.  At the residence Detective Houston recovered a spent bullet from the bathroom and a K9 alerted on a slab of concrete in the backyard.  The detective later returned and, after the slab was broken apart, began digging until he smelled what he believed to be the odor of a decomposing body.  The detective halted the dig until additional equipment could uncover and remove the body.  A medical examiner took the body to the medical examiner's office, and a bullet was removed from the head of the body during the autopsy.  A fingerprint analysis determined the body was Nicki Hendriex.

About one month later Pollock was arrested and charged with second degree murder with a firearm based on Detective Houston's conclusion that Pollock shot Hendriex in the head after a confrontation in the bathroom and buried her in the backyard.  Detective Houston based these conclusions on statements from witnesses who attested that Pollock had admitted to killing Hendriex.

A jury found Pollock guilty but the conviction was reversed and remanded after the Second District Court of Appeal found Pollock's appellate counsel was ineffective. *Pollock v. State*, 64 So. 3d 695 (Fla. 2d DCA).  At a re-trial a second jury found Pollock guilty of second-degree murder with a firearm, and he was sentenced to the current term of imprisonment of thirty years.

Pollock alleges twelve grounds for relief.  The respondent argues that most of the grounds are unexhausted and procedurally barred from federal review.

II.   **EXHAUSTION AND PROCEDURAL DEFAULT**

The respondent argues that Grounds One through Five, Eight, and Ten through Twelve are procedurally barred from federal review, primarily because Pollock failed to fully exhaust his available state court remedies.  An applicant must present each claim to a state court before presenting the claim to a federal court.  "[E]xhaustion of state remedies requires that petitioners 'fairly presen[t]' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)); *accord Rose v. Lundy*, 455 U.S. 509, 518–19 (1982) ("A rigorously enforced total exhaustion rule will encourage state prisoners to seek full relief first from the state courts, thus giving those courts the first opportunity to review all claims of constitutional error.").  "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese,* 541 U.S. 27, 32 (2004) (citing *Duncan*).

**Grounds One through Five:**

Pollock alleges that the trial court erred (1) by allowing both evidence of his behavior and statements and evidence of his uncharged crimes (Grounds One and Two) and (2) by denying motions for a judgment of acquittal and for a new trial (Grounds Three and Four).  Also, Pollock alleges that the post-conviction court erred by not granting a new trial based on newly discovered evidence (Ground Five).

The respondent correctly argues that Pollock failed to "fairly present" these grounds to the state courts because he failed to present each claim as a federal question, that is, he failed to "federalize" the claims.  Pollock presented claims similar to Grounds One through Four on direct appeal and similar to Ground Five on the appeal from the denial of post-conviction relief but he presented each claim as an abuse of discretion under state law and not as the violation of a federally protected right.  The exhaustion requirement is not met if a defendant fails to alert the state appellate court that the trial court allegedly violated a federally protected right.  As *Reese* explains, 541 U.S. at 32, an applicant must alert the state court that he is raising a federal law claim and not just a state law claim.

> A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim "federal."

As a consequence, "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made."  *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *see also Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1271, 1345 (11th Cir. 2004) ("The exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.") (citations omitted); *Upshaw v. Singletary*, 70 F.3d 576, 578 (11th Cir. 1995) ("[T]he applicant must have fairly apprised the highest court of his state with the appropriate jurisdiction of the federal rights which allegedly were violated.").  An applicant must present to the state court the same claim presented to the federal court.

*Picard v. Connor*, 404 U.S. at 275 ("[W]e have required a state prisoner to present the state courts with the same claim he urges upon the federal courts.").  "[M]ere similarity of claims is insufficient to exhaust." *Duncan*, 513 U.S. at 366.  Grounds One through Five are unexhausted and not entitled to a review on the merits unless Pollock shows entitlement to an exception to the exhaustion requirement, as discussed below.

**Ground Eight:**

Pollock alleges that trial counsel rendered ineffective assistance by not impeaching Detective Houston with prior inconsistent statements.  Pollock asserted this claim in his amended Rule 3.850 motion (Respondent's Exhibit 35 at 42–43), and the post-conviction court summarily denied this claim (Respondent's Exhibits 34 at 8 and 36 at 13–14) because Pollock failed to meet the prejudice requirement.  Pollock did not include this claim in his opening brief on the appeal from the denial of his motion for post-conviction relief.  Consequently, Pollock failed to "fairly present" this claim to the state appellate court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) ("Boerckel's failure to present three of his federal habeas claims to the Illinois Supreme Court in a timely fashion has resulted in a procedural default of those claims."); *Duest v. Dugger*, 555 So. 2d 849, 851–52 (Fla. 1990) ("The purpose of an appellate brief is to present arguments in support of the points on appeal[, and the failure to] further elucidate[ ] is not suffic[ient] to preserve [an] issue[, which is] deemed to have been waived.").  Ground Eight is unexhausted and not entitled to a review on the merits unless Pollock shows entitlement to an exception to the exhaustion requirement, as discussed below.

**Grounds Ten through Twelve:**

Lastly, in his federal application Pollock alleges three grounds he has never previously asserted.  Pollock alleges (1) that the prosecutor both erroneously told the jurors that France was a co-defendant and introduced evidence recovered from France's storage unit (Ground Ten) and (2) that trial counsel was ineffective for neither retaining a ballistics expert witness nor "citing" a state witness as having acted as a government informant (Grounds Eleven and Twelve).  The respondent correctly asserts that these grounds were never presented to a state court.  In reply Pollock does not dispute the respondent's position but asserts his entitlement to review of these grounds as authorized by *Martinez v. Ryan*, 566 U.S. 1 (2012).  The applicability of *Martinez* is discussed below in determining whether Pollock shows entitlement to an exception to the exhaustion requirement.

\* \* \* \*

As determined above, Pollock procedurally defaulted Grounds One through Five by not "federalizing" each ground in state court and Ground Eight by not raising it on appeal.  State procedural rules preclude Pollock from returning to state court to present his federal claims in another appeal.  *See* Fla. R. App. P. 9.140(b)(3).  And Grounds Ten through Twelve, which Pollock never presented to a state court, are deemed procedurally defaulted.  *See Shinn v. Ramirez,* 596 U.S. 366, 378 (2022) (noting that if a prisoner failed to present a federal claim to the state court and the state court would dismiss the claim based on a procedural failure, the claim is technically exhausted because, in the habeas context, "state-court remedies are . . . 'exhausted' when they are

no longer available, regardless of the reason for their unavailability.") (quoting *Woodford v. Ngo,* 548 U.S. 81, 92–93 (2006)); *Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) ("[W]hen it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, we can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief.").

As a consequence, these grounds are barred from federal review absent a showing of "actual cause and prejudice" or "manifest injustice." *See generally Coleman v. Thompson*, 501 U.S. 722, 747–51 (1991); *Murray v. Carrier*, 477 U.S. 478, 496 (1986). The basis for "cause" must ordinarily reside in something external to the defense. *Marek v. Singletary*, 62 F.3d 1295, 1302 (11th Cir. 1995). To show "prejudice," the applicant must show "not merely that the errors at his trial created the *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Hollis v. Davis*, 941 F.2d 1471, 1480 (11th Cir. 1991) (italics original) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).

Pollock argues that he shows "cause and prejudice" based on the negligence of trial, appellate, and post-conviction counsel. Pollock must have exhausted the specific claim that he argues excuses a procedural default, including whether counsel was ineffective. "A showing of ineffective assistance of appellate counsel in failing to raise a claim on direct appeal can constitute 'cause' so long as the ineffective assistance 'occur[red] during a stage when a petitioner had a constitutional right to counsel' and

the ineffective-assistance claim itself is 'both exhausted and not procedurally defaulted.'" *Sealey v. Warden, Georgia Diagnostic Prison*, 954 F.3d 1338, 1365 (11th Cir. 2020) (internal citations omitted); *see also Edwards, v. Carpenter,* 529 U.S. 446, 453 (2000) (ruling that a federal habeas court is barred from considering a procedurally defaulted "ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim" unless the applicant establishes "the cause-and-prejudice standard with respect to" the ineffective assistance claim); *Carrier*, 477 U.S. at 488–89 (recognizing that, if ineffective assistance of counsel is alleged as cause to excuse a procedural default, the applicant must have presented the claim of ineffectiveness to the state courts as an independent claim); *Hill v. Jones*, 81 F.3d 1015, 1030 (11th Cir. 1996) ("[P]rocedurally defaulted claims of ineffective assistance *cannot* serve as cause to excuse a default of a[nother] claim.") (italics original)).  Pollock never presented to the state courts a claim of ineffective assistance of appellate counsel regarding the failure to raise the direct appeal claims in Grounds One through Four, and he cannot argue "cause" based on post-conviction appellate counsel's (1) failing to "federalize" the claim in Ground Five and (2) omitting the claim in Ground Eight because Pollock had no right to counsel in a post-conviction appeal.

Alternatively, Pollock argues that, under *Martinez*, he shows "cause and prejudice" based on the negligence of trial, appellate, and post-conviction counsel. Pollock can rely on *Martinez* to establish cause for the procedural default of neither Grounds One through Four (based on appellate counsel's failure to "federalize" his trial-court-error claims) nor Grounds Five and Eight (based on post-conviction

counsel's omitting the claims on appeal) because *Martinez* applies only to a claim of ineffective assistance of trial counsel — not appellate counsel. *Davila v. Davis*, 582 U.S. 521, 531 (2017) ("In declining to expand the *Martinez* exception to the distinct context of ineffective assistance of appellate counsel, we do no more than respect that judgment."). Additionally, Pollock's claim in Ground Ten (that the prosecutor both erroneously told the jurors that France was a co-defendant and introduced evidence recovered from France's storage unit) asserts no claim of ineffective assistance of trial counsel. Consequently, the claim is beyond the reach of *Martinez*. On the other hand, Grounds Eleven (trial counsel failed to retain a ballistics expert) and Twelve (trial counsel failed to argue that a witness was a government informant) allege claims of ineffective assistance of trial counsel. Affording his *pro se* papers a generous interpretation, Pollock argues that post-conviction counsel provided ineffective assistance by not asserting these two ineffective-assistance-of-trial-counsel claims. To show entitlement to review under *Martinez*, Pollock must show that his claims are "substantial," which is a claim that has "some merit." *Martinez*, 566 U.S. at 14. Because the law governing ineffective assistance of counsel governs whether Pollock can meet his burden of showing that his claims are "substantial," Grounds Eleven and Twelve are discussed further after the remaining grounds of ineffective assistance of trial counsel.

As an alternative to showing "cause and prejudice," Pollock must show that dismissal of his procedurally defaulted grounds will result in a "fundamental miscarriage of justice," an especial difficulty because Pollock must demonstrate his

"actual innocence" of the crime of conviction.  *See Smith v. Murray*, 477 U.S. 527, 537 (1986) (citing *Murray v. Carrier*, 477 U.S. at 496); *see also Engle v. Isaac*, 456 U.S. 107, 134–35 (1982).  To meet the fundamental miscarriage of justice exception, Pollock must show constitutional error coupled with "new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial."  *Schlup v. Delo*, 513 U.S. 298, 324 (1995).  This exception is not available unless "petitioner shows, as a factual matter, that he did not commit the crime of conviction."  *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995) (denying a certificate of probable cause).

Pollock summarily asserts that he is "actually innocent" and that "fundamental errors" have caused a "miscarriage of justice."  However, Pollock presents no "new reliable evidence" that was both not presented at trial and shows he did not commit the crime.

Pollock establishes neither "cause and prejudice" nor a "fundamental miscarriage of justice."  Therefore, Grounds One through Five, Eight, and Ten are procedurally barred from federal review and not entitled to a determination on the merits.  Whether Grounds Eleven and Twelve are entitled to a review on the merits follows the discussion of Grounds Six, Seven, and Nine, which are entitled to a review on the merits.

## III.   <u>STANDARD OF REVIEW</u>

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding.  *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir.

1998).  Section 2254(d), which creates a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Williams v. Taylor*, 529 U.S. 362, 412–13 (2000), explains this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied — the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different

from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 693 (2002). "To meet that standard, a prisoner must show far more than that the state court's decision was 'merely wrong' or 'even clear error.'" *Shinn v. Kayer*, 592 U.S. 111, 118 (2020) (quoting *Virginia v. LeBlanc*, 582 U.S. 91, 94 (2017)). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see White v. Woodall*, 572 U.S. 415, 427 (2014) ("The critical point is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question . . . .") (citing *Richter*); *Woods v. Donald*, 575 U.S. 312, 316 (2015) ("And an 'unreasonable application of' those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice.") (citing *Woodall*, 572 U.S. at 419); *accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given

effect to the extent possible under law." *Bell*, 535 U.S. at 694. A federal court must afford due deference to a state court's decision. "AEDPA prevents defendants — and federal courts — from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

When the last state court to decide a federal claim issues a reasoned and explanatory opinion, a federal habeas court reviews the specific reasons as stated in the opinion and defers to those reasons if they are reasonable. *Wilson v. Sellers*, 584 U.S. 122, 125 (2018) ("[A] federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable."). When the relevant state-court decision is not accompanied with reasons for the decision, the federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Wilson*, 584 U.S. at 125. The State may contest "the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision . . . ." *Wilson*, 584 U.S. at 125.

In a *per curiam* decision without a written opinion the state appellate court on direct appeal affirmed Pollock's convictions and sentence. (Respondent's Exhibit 31) Similarly, in another *per curiam* decision without a written opinion the state appellate

court affirmed the denial of Pollock's Rule 3.850 motion for post-conviction relief.

(Respondent's Exhibit 42)  The state appellate court's *per curiam* affirmances warrant

deference under Section 2254(d)(1) because "the summary nature of a state court's

decision does not lessen the deference that it is due."  *Wright v. Moore*, 278 F.3d 1245,

1254 (11th Cir. 2002); *see also Richter*, 562 U.S. at 100 ("When a federal claim has been

presented to a state court and the state court has denied relief, it may be presumed that

the state court adjudicated the claim on the merits in the absence of any indication or

state-law procedural principles to the contrary."); *Bishop v. Warden*, 726 F. 3d 1243,

1255–56 (11th Cir. 2013) (describing the difference between an "opinion" or "analysis"

and a "decision" or "ruling" and explaining that deference is accorded the state court's

"decision" or "ruling" even absent an "opinion" or "analysis").

As *Pinholster* explains, 563 U.S. at 181–82, review of the state court decision is

limited to the state court record:

> We now hold that review under § 2254(d)(1) is limited to the
> record that was before the state court that adjudicated the claim on
> the merits. Section 2254(d)(1) refers, in the past tense, to a state-
> court adjudication that "resulted in" a decision that was contrary
> to, or "involved" an unreasonable application of, established law.
> This backward-looking language requires an examination of the
> state-court decision at the time it was made. It follows that the
> record under review is limited to the record in existence at that
> same time, i.e., the record before the state court.

Pollock bears the burden of overcoming by clear and convincing evidence a state court's

fact determination.  "[A] determination of a factual issue made by a State court shall

be presumed to be correct.  The applicant shall have the burden of rebutting the

presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir. 2001). The state post-conviction court's rejection of Pollock's claims warrants deference in this federal action. (Order Denying Motion for Post-Conviction Relief, Respondent's Exhibits 36 and 38) Pollock's remaining grounds of ineffective assistance of counsel are the same grounds that he presented to the state courts.

## IV.   INEFFECTIVE ASSISTANCE OF COUNSEL

Pollock claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim, as *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998), explains:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*,
>
> > First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

An applicant must prove both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

Pollock must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. To meet this burden, Pollock must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

*See Pye v. Warden, Ga. Diagnostic Prison*, 50 F.4th 1025, 1041–42 (11th Cir. 2022) (*en banc*) (brackets original) ("Applying AEDPA to *Strickland*'s prejudice standard, we must decide whether the state court's conclusion that [counsel's] performance . . . didn't prejudice [petitioner] — that there was no substantial likelihood of a different result — was so obviously wrong that its error lies beyond any possibility for fairminded disagreement.") (internal quotation marks omitted).

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690–91.  As *Dunn v. Reeves*, 594 U.S. 731, 739 (2021) (italics original), explains, deference is to both counsel's and the state court's decisions, recognizing that counsel decides strategic options based on both limited resources and limited time.

> [W]e owe deference to both Reeves' counsel *and* the state court. As to counsel, we have often explained that strategic decisions — including whether to hire an expert — are entitled to a "strong presumption" of reasonableness. *Harrington v. Richter*, 562 U.S. 86, 104, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011). Defense lawyers have "limited" time and resources, and so must choose from among " 'countless' " strategic options. *Id.*, at 106–107, 131 S. Ct. 770. Such decisions are particularly difficult because certain tactics carry the risk of "harm[ing] the defense" by undermining credibility with the jury or distracting from more important issues. *Id.*, at 108, 131 S. Ct. 770.

And *White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992), explains that Pollock cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious:  the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable . . . .  [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

Under Section 2254(d) Pollock must prove that the state court's decision "(1) [was] contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) [was] based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Sustaining a claim of ineffective assistance of counsel is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."  *Richter*, 562 U.S. at 105; *see also Reeves*, 594 U.S. at 739 ("This analysis is 'doubly deferential' when, as here, a state court has decided that counsel performed adequately."); *Pinholster*, 563 U.S. 202 (An applicant  must overcome this "'doubly deferential' standard of *Strickland* and the AEDPA."); *Nance v. Warden, Ga. Diag. Prison*, 922 F.3d 1298, 1303 (11th Cir. 2019) ("Given the double deference due, it is a 'rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is

found to merit relief in a federal habeas proceeding.'") (quoting *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 911 (11th Cir. 2011)); *Pooler v. Sec'y, Dep't of Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view Pooler's ineffective counsel claim — which is governed by the deferential *Strickland* test — through the lens of AEDPA deference, the resulting standard of review is "doubly deferential.").  "And in reviewing the work of their peers, federal judges must begin with the 'presumption that state courts know and follow the law.'  Or, in more concrete terms, a federal court may grant relief only if *every* 'fairminded juris[t]' would agree that *every* reasonable lawyer would have made a different decision."  *Reeves*, 594 U.S. at 739–40 (quoting both *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002), and *Richter*, 562 U.S. at 101) (italics and brackets original).

In summarily denying Pollock's motion for post-conviction relief, the state court recognized that *Strickland* governs a claim of ineffective assistance of counsel. (Respondent's Exhibit 34 at 2)  Because the state court rejected the grounds based on *Strickland*, Pollock cannot meet the "contrary to" test in Section 2254(d)(1).  Pollock instead must show that the state court unreasonably applied *Strickland* or unreasonably determined the facts.  In determining "reasonableness," the statute limits federal review to determining only "whether the state habeas court was objectively reasonable in its *Strickland* inquiry," not independently assessing whether counsel's actions were reasonable.  *Putnam v. Head*, 268 F.3d 1223, 1244, n.17 (11th Cir. 2001).  The presumption of correctness and the highly deferential standard of review requires that the analysis of each ground begin with the state court's analysis.

**Ground Six:**

Pollock alleges that trial counsel was ineffective for not impeaching Tamila Cagle, who was the main witness against him, with her many prior statements that Pollock contends were inconsistent with her trial testimony. Pollock identifies eleven statements during trial (labeled as A–K) that he contends were inconsistent with twenty-nine prior statements. The response includes a detailed chart that aligns the alleged inconsistent statements with Cagle's trial testimony. (Doc. 12 at 23–25)

The post-conviction court thoroughly analyzed each alleged inconsistent statement and summarily denied relief based on the statements labeled D–G and J–K. (Respondent's Exhibit 36 at 7–12) After considering the state's response to the remaining prior statements, the post-conviction court concurred with the respondent's argument that the statements were either not inconsistent or not prejudicial. (Respondent's Exhibit 38)[2]

As stated above, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable," *Strickland*, 466 U.S. at 690–91, and deference is afforded to both counsel's and the state court's decisions. *Reeves*, 594 U.S. at 739. Counsel's decision to cross-examine and his manner of cross-examining are strategic decisions entitled to deference. *Dorsey v. Chapman*, 262 F.3d 1181, 1185–86 (11th Cir. 2001). The only question is whether counsel's strategic decision was "reasonable." *Minton v. Sec'y, Dep't of Corr.*, 271 F. App'x 916, 918 (11th

---

[2] The pages in the order are not numbered but are identified as pages 316–21 in EM/ECF.

Cir. 2008) ("The Supreme Court has 'declined to articulate specific guidelines for appropriate attorney conduct and instead has emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'") (quoting *Wiggins v. Smith*, 539 U.S. 510, 521 (2003).  The post-conviction court's determinations — (1) that the few statements that were inconsistent were not prejudicial and (2) that counsel's strategic decisions regarding cross-examination were reasonable — are not an unreasonable application of *Strickland*.  Consequently, Pollock is not entitled to relief based on Ground Six.

**Ground Seven:**

Pollock alleges that trial counsel was ineffective for not introducing into evidence recorded telephone calls by France while he was in jail, which calls implicated him as the person who committed the murder.  The post-conviction court determined that the recordings of the telephone calls were inadmissible (Exhibit 38 at 322–23) (reference to record omitted):

> Defendant has not alleged any hearsay exception under which the calls could have been admitted as evidence at trial. See § 90.804(2), Fla. Stat. Moreover, the content of the calls, as alleged by Defendant, appears to be consistent with Ms. Cagle's testimony that Defendant killed the victim because, in part, of how the victim treated Mr. France, and consistent [with] her testimony that Mr. France knew the victim was dead because Defendant told her the gunshot woke up Mr. France[,] and [that] Defendant and Mr. France buried the victim's body. Thus, even if the calls had been admissible, the Court finds they would not have resulted in a different outcome at trial as the calls support and are consistent with Ms. Cagle's trial testimony.

The post-conviction court determined that trial counsel was not ineffective because the telephone calls were neither admissible nor prejudicial.  Generally, a state's

- 21 -

interpretation of its own laws or rules provides no basis for federal habeas corpus relief. "We have repeatedly held that a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *see, e.g., Estelle v. McGuire*, 502 U.S. 62, 75 (1991) (stating that "our habeas powers [do not] allow us to reverse [a] conviction based on a belief that the trial judge incorrectly interpreted the" state's evidence rules); *Burgett v. Texas*, 389 U.S. 109, 113–114 (1967) (recognizing that a federal petition for the writ of habeas corpus permits only limited authority to review a state court's evidentiary ruling). Having determined that, because the telephone calls were inadmissible, trial counsel's performance was not deficient. The state court reasonably applied *Strickland* in rejecting Pollock's claim of ineffective assistance of counsel based on the claim in Ground Seven.

**Ground Nine:**

Pollock alleges that trial counsel was ineffective for not objecting to Detective Houston's testifying as an expert witness regarding a "ricochet." The response accurately summarizes the relevant testimony as follows (Doc. 12 at 6) (references to record omitted):

> Houston testified that a spent bullet and pieces of decorative glass of the same type as the glass found with the victim's body were found in the bathroom of the residence. A fired bullet was found under the tub. Houston also observed a broken tile on the wall of the bathroom and recovered a small metal fragment from the tile. Houston opined that it was consistent with a ricochet of a bullet being fired and embedding a portion of the bullet in the tile.

The post-conviction court denied relief under this claim as follows (Respondent's Exhibit 34 at 9–10) (references to record omitted):

In claim five, Defendant alleges ineffective assistance of counsel for failing to object to the introduction of Eric Houston's expert testimony on ricochets when he was never listed as an expert witness. He alleges the State introduced Detective Houston's expert testimony that a bullet had ricocheted in the bathroom where the murder allegedly occurred. He alleges the State then contended Walter Brois's testimony about Defendant discussing with him a defense based on "ricochet case law" meant Defendant admitted the murder. Defendant alleges he was prejudiced because the ricochet testimony was a feature of the case where the State argued the discovery of two bullets demonstrated the shooter had ill-will, spite, and hatred for the victim and corroborated Walter Brois's testimony. Defendant contends there is a reasonable probability that but for counsel's unprofessional errors the outcome of the trial would have different.

The Court finds claim five to be without merit. First, the Court finds Defendant is referencing . . . Detective Houston's testimony about potential ricochet . . . .

As to Detective Houston's testimony about whether a bullet had ricocheted, he testified his opinion was based on his experience and observations. He testified he observed a metal fragment imbedded in a tile above the bathtub and a spent bullet under the tub. He testified that based on his own experience and observations, the metal fragment imbedded in the wall was consistent with a bullet ricocheting off the wall. Thus, as Detective Houston's testimony was based on his own observations and experience, the Court finds counsel did not act deficiently for failing to object.

The post-conviction court determined that trial counsel was not ineffective because Detective Houston was testifying based on his own observations and experiences, not as an expert witness. Consequently, because Ground Nine is based on a faulty premise — that Detective Houston testified as an expert witness — the state court reasonably applied *Strickland* in determining that trial counsel's performance was not deficient.

\* \* \* \*

**Claims under _Martinez_:**

As discussed above, Pollock asserts entitlement to review of the claims of ineffective assistance of trial counsel alleged in Grounds Eleven and Twelve, specifically, that trial counsel was ineffective for neither retaining a ballistics expert witness nor "citing" a state witness as having acted as a government informant. _Martinez_ applies only if (1) a state requires a prisoner to raise a claim of ineffective assistance of trial counsel in an initial review collateral proceeding, (2) the prisoner failed to properly raise the ineffective assistance of trial counsel claim in his state initial review collateral proceeding, (3) the prisoner did not have collateral counsel or his collateral counsel was ineffective, and (4) the failure to excuse the procedural default would result in the loss of a "substantial" claim of ineffective assistance of trial counsel. _Martinez_, 566 U.S. at 14.  Because he had the benefit of post-conviction counsel, Pollock must show that post-conviction counsel was ineffective for not asserting these two grounds.  To show entitlement to review under _Martinez_, Pollock must show that his claims are "substantial," which are claims that have "some merit."  _Martinez_, 566 U.S. at 14.

Pollock must overcome not only the deference afforded to trial counsel's strategic decision but also that no competent post-conviction counsel would have omitted the claims in Grounds Eleven and Twelve, as _Hittson v. GDCP Warden_, 759 F.3d 1210, 1263 (11th Cir. 2014) (italicized emphasis original), explains:

> As we have explained, _Strickland_ instructs courts to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" — that counsel

"rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." 466 U.S. at 689–90, 104 S. Ct. at 2065–66. To overcome this presumption, a petitioner must "establish that no competent counsel would have taken the action that his counsel did take." *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir.2000) (*en banc*).

Thus, to show that his habeas counsel failed to provide the level of representation required by *Strickland*, Hittson must show more than the mere fact they failed to raise potentially meritorious claims; he must show that *no competent counsel*, in the exercise of reasonable professional judgment, would have omitted those claims. Even assuming that the underlying ineffective-assistance claims are meritorious[,] Hittson has not established that his state habeas counsel were incompetent for failing to raise them.

In Ground Eleven Pollock alleges that trial counsel should have retained a ballistics expert, but he fails both to identify what testimony a ballistics expert could provide and to show that there is a reasonable probability that such unknown testimony would have produced a different outcome at trial. In short, the allegation is conclusory and fails to meet *Martinez's* minimal requirement that the claim is "substantial," that is, that the claim has "some merit."

In Ground Twelve Pollock alleges that trial counsel was ineffective for not "citing" that Walter Brois — a jailhouse informant who testified against Pollock — was acting as a government informant. As discussed above, counsel's decision on how to cross-examine a witness is a strategic decision entitled to deference. *Dorsey*, 262 F.3d at 1185–86. Even if he could show that trial counsel performed deficiently by not eliciting testimony that Brois was allegedly a "government informant," Pollock cannot meet the minimal requirement of showing prejudice. Brois testified that he has thirty-five felony convictions, that he was serving a twenty-year sentence, and that he was then

challenging his sentence in a separate proceeding.  (Respondent's Exhibit 20 at 692)

Brois admitted on direct examination both that "the reason why you're doing this is

because you're hoping that you can mitigate your sentence" and that he filed a motion

for rehearing specifically so the judge could both consider his testimony against Pollock

and reconsider the denial of his motion to mitigate sentence.  (Respondent's Exhibit 20

at 690 and 692)  On cross-examination Brois admitted (1) that "he was doing

everything that [he] can to have [his twenty-year sentence] reduced," (2) that in the past

he had obtained information from a defendant in a death penalty case and provided

that information to the state, (3) that he had talked with Detective Houston "a few

times" and that the detective had testified on Brois's behalf at a sentencing hearing, and

(4) that he hoped Detective Houston would testify for him at a future hearing.

(Respondent's Exhibit 20 at 697–705)  Trial counsel ensured that the jury knew that

Brois was testifying against Pollock in hopes of getting his sentence reduced.  Whether

Brois was a "government informant" was an additional fact that, if true, was likely

insufficient to change the outcome.  Consequently, even if the claim in Ground Twelve

meets the minimal showing that the claim is "substantial," the claim fails on the merits.

## V.   CONCLUSION

Pollock fails to meet his burden to show that the state court's decision was either

an unreasonable application of controlling Supreme Court precedent or an

unreasonable determination of fact.  As *Burt v. Titlow*, 571 U.S. 12, 19–20 (2013), states:

> Recognizing the duty and ability of our state-court colleagues to
> adjudicate claims of constitutional wrong, AEDPA erects a
> formidable barrier to federal habeas relief for prisoners whose

claims have been adjudicated in state court. AEDPA requires "a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. [86, 103] (2011). "If this standard is difficult to meet" — and it is — "that is because it was meant to be." *Id.*, at [102]. We will not lightly conclude that a State's criminal justice system has experienced the "extreme malfunctio[n]" for which federal habeas relief is the remedy. *Id.*, at [103] (internal quotation marks omitted).

Pollock's application for the writ of habeas corpus (Doc. 1) is **DENIED**.  The clerk must enter a judgment against Pollock and **CLOSE** this case.

### DENIAL OF BOTH
### A CERTIFICATE OF APPEALABILITY
### AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Pollock is not entitled to a certificate of appealability ("COA").  A prisoner seeking a writ of habeas corpus has no entitlement to appeal a district court's denial of his application.  28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a COA.  Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right."  To merit a COA, Pollock must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise.  *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001).  Because he fails to show that reasonable jurists would "find debatable" either the merits of the grounds or the procedural issues, Pollock is entitled to neither a COA nor leave to appeal *in forma pauperis*.

A certificate of appealability is **DENIED**.  Leave to appeal *in forma pauperis* is **DENIED**.  Pollock must obtain permission from the circuit court to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on September 13, 2024.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE